IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: BLAKE ROUSSEL                                              CASE NO. 4:11-bk-14470
AND AMANDA ROUSSEL,
      Debtors.


CLEAR SKY PROPERTIES, LLC                                         PLAINTIFFS
and LUANNE DEERE

V.                                         4:11-ap-01266

BLAKE ROUSSEL                                                     DEFENDANTS


MEMORANDUM OPINION

     Blake Roussel (Roussel) and his wife Amanda Roussel filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on July 11, 2011. Clear Sky Properties, LLC, an Arkansas limited liability company (Clear Sky), and Luanne Deere (Deere) initiated this adversary proceeding to determine the dischargeability of Roussel's debt to Clear Sky and Deere that was evidenced by a judgment against Roussel out of Faulkner County.

     On March 20, 2012, Clear Sky and Deere (Plaintiffs) filed a motion for summary judgment and brief in support with this Court. Roussel filed a response and cross motion for partial summary judgment and brief in support. A hearing was held on June 15, 2012. An order was entered denying the motion for summary judgment and the cross motion for summary judgment and the matter was set for trial. A two-day trial was held on July 17 and 18, 2012. The matter was taken under advisement. Both parties filed subsequent briefs in the matter.

     The matter is a core proceeding and the court has jurisdiction pursuant to 28 U.S.C. §

1

1334 and § 157 (b)(2)(I). The Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## I.  BACKGROUND

Clear Sky was created in August of 2006 by Deere and Roussel in order to open an Exit Realty real estate franchise in Faulkner County. On August 31, 2006, Deere and Roussel, as individuals, entered into a Franchise Agreement with Real Estate Opportunities, Inc. d/b/a Exit Realty Arkansas, an Arkansas corporation.[1] Clear Sky, doing business as Exit First Choice Realty, was opened in Conway in early September of 2006. Deere and Roussel were the only members of Clear Sky, each owning fifty percent.

In June of 2007, Deere and Roussel entered into an operating agreement for Clear Sky, which they both signed as managing members. This agreement established, among other things, procedures for how members of Clear Sky could sell their interest in the company and provided that existing members would have a right of first refusal to buy a member's interest.

Roussel started expressing an interest in selling his half of Clear Sky in early 2007. Roussel proposed to sell his interest to Rhonda Bletsh (Bletsh) and Nathan Hutchins (Hutchins) who were licensed real estate agents that worked at Clear Sky. On June 24, 2008, Roussel informed Deere that his negotiation with Bletsh and Hutchins to sell his interest was unsuccessful and he offered to sell his entire half interest to Deere for $115,000.00. Deere declined the offer.

---

[1] Exit Realty Arkansas is the designated sub-franchisor in Arkansas and Oklahoma for Exit Realty International. Exit Realty of Arkansas is owned by Roussel's parents, Scott and Laura Roussel.

Sometime in July of 2008, the office was moved to a new building that Deere purchased with her own money and leased back to Clear Sky.  On July 31, 2008, Roussel presented a document to Deere that evidenced an agreement to sell one-third of his fifty percent interest to Bletsh and another one-third to Hutchins.  Deere exercised her right of first refusal and purchased two-thirds of Roussle's fifty percent interest for $52,000.00 on August 28, 2008.  This made her an eighty-four percent owner of Clear Sky.  Roussel became a sixteen percent owner.  Unbeknownst to Deere, Roussel was making plans to open another real estate office in Conway with Bletsh and Hutchins, under the Exit brand.  Deere testified that, had she known Roussel was going to open another office she would never have exercised her option.

On September 12, 2008, Roussel, Bletsh, and Hutchins filed articles of organization for Select Group Investments, LLC with the Arkansas Secretary of State.  On October 8, 2008, Roussel notified Deere via text message that he was opening another office with Bletsh and Hutchins.  Deere testified that when she arrived at the Clear Sky office everything was erased off the company computer and files, and monitors, signs, and lock boxes were missing.

Twelve other Clear Sky agents and the office administrator followed Roussel to his new Exit franchise in Conway, known as Exit Realty Select (Exit Select).  Roussel remained a member of both offices.  At one point there were discussions of Deere buying Roussel out of his sixteen percent ownership interest but an agreement between the parties could not be reached.

Deere and Clear Sky filed a complaint on February 13, 2009, in Faulkner County.  The Plaintiffs alleged breach of fiduciary duty, breach of a duty of loyalty, fraud, breach of contract, and violation of the Arkansas Franchise Practice Act.  According to the complaint, Roussel owed a fiduciary duty as a managing member to act in the best interest of Clear Sky and he violated

3

this duty of loyalty when he opened up a competing office. The Plaintiffs also alleged that Roussel damaged Clear Sky's computers the night before he left and recruited agents to leave.

The fraud count was dismissed before the case went to trial. The jury was presented with Deere's loan history to Clear Sky from December 2008 through December 2010, which amounted to $58,800.00. On the issue of punitive damages, the jury instructions provided that:

> In order to recover punitive damage from Blake Roussel, Plaintiffs have the burden of proving either first, Blake Roussel knew or ought to have known in the light of the surrounding circumstances, his conduct would naturally and probably result in damages, and that he continued such conduct with reckless disregard to the consequences from which malice may be inferred; or second, that Blake Roussel intentionally pursued a course of conduct for the purpose of causing damage or both.

The Faulkner County jury found that Roussel had a fiduciary duty to Clear Sky and to Deere, not to compete against his own business and he breached that duty, which caused the damages to Clear Sky and Deere. The state court jury trial verdict was reduced to a money judgment. A total of $300,000.00 was awarded to Clear Sky; specifically $111,280.60 for past lost revenue; $73,403.00 for future lost revenue, $1,480.00 for damage to property, and $113,836.40 for punitive damages. On Deere's claim for breach of fiduciary duty as a co-member of Clear Sky, the amount of damages was set at $58,800.00 and she was awarded $40,000.00 for breach of contract.[2] Roussel was ordered to pay attorneys' fees in the amount of $82,611.25 and expenses and costs in the amount of $4,912.00.

In the trial before this Court, Bletsh testified that there was never any intent to harm Clear Sky when Bletsh, Hutchins, and Roussel opened up Exit Select. Bletsh and Hutchins testified that they believed there were benefits to having two Exit offices owned in Conway

---

[2]Both parties agree that the $40,000.00 awarded for breach of contract is dischargeable.

4

because it could strengthen the Exit brand. Bletsh explained that under the Exit system, Deere would continue to receive any residual due her as a result of any agent she initially sponsored, regardless of which Exit office the agent operated from. Roussel testified that Deere received ten percent of the commission in residuals on all of Bletsh and Hutchins' sales.

Bletsh and Roussel testified that there were ongoing discussions regarding trying not to harm Clear Sky because the public perceives both Exit offices as one entity. Hutchins testified that he had no recollection of any such discussions.

Scott Jones (Jones) was initially an associate broker at Clear Sky. Bletsh asked Jones to be the principal broker for Exit Select until she could get her license. Jones testified that he initially was concerned about there being two Exit offices in Conway but his concerns were assuaged when he discovered that Exit initially designated Conway to add two franchises to the town. Jones also testified that Exit Select would be better off if Clear Sky did well because the public links the two offices as one.

There was a list of items presented to the jury in state court that Deere alleges were taken when the new office was opened. (Pl. Ex. 17.) Bletsh, Hutchins, Roussel and Jones all testified that items on the list that were taken were taken by mistake and returned to Deere.

Deere testified that the mass defection of her agents to Exit Select was financially devastating. Bletsh, Hutchins, Roussel and Jones all testified that no agents were solicited to leave Clear Sky, rather they all came on their own accord.

## II. ARGUMENT

The Plaintiffs argue the debt that was reduced to a judgment debt in Faulkner County, along with the attorneys' fees award, should be declared nondischargeable pursuant to 11 U.S.C.

§ 523(a)(4) and § 523(a)(6). Furthermore, the Plaintiffs argue that the Court is collaterally estopped from retrying the facts; rather, the Court is only to look at the complaints, the judgment and the jury instructions out of Faulkner County.

Roussel argues these debts are dischargeable because the state court finding of breach of fiduciary duty is not based the same standard that 11 U.S.C. § 523(a)(4) requires for a debt to be declared nondischargeable. Furthermore, if there is no breach that rises to the level of nondischargeablilty required for § 523(a)(4), then the punitive damages are dischargeable as well because there is nothing for them to attach to.

Roussel also argues that he engaged in ordinary competition, but none that arises to anything that was willful and malicious as required by 11 U.S.C. § 523(a)(6). Roussel argues that the issues actually litigated in state court cannot meet the standard for collateral estoppel because it is impossible to determine what was actually litigated. Finally, Roussel argues that the attorneys' fees are based on breach of a contract and are therefore dischargeable.

### III. DISCUSSION

In order for an issue to be barred from relitigation, the following elements must be present:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
> (2) the issue must have been litigated in the prior action;
> (3) the issue must have been determined by a valid and final judgment; and
> (4) the determination must have bene essential to the prior judgment.

Tudor Oaks Ltd. P'ship. v. Cochrane (In re Cochrane), 124 F.3d 978, 983 (8th Cir. 1997). Collateral estoppel "applies in bankruptcy court to bar the relitigation of factual or legal issues that were determined in a prior state court action." In re Cochrane, 124 F.3d 978, 983 (8th Cir.

6

1997)(citations omitted); see Laughter v. Speight (In re Speight), 167 B.R. 891 (W.D. Ark. 1993), *aff'd*, 16 F.3d 287 (8th Cir. 1994).

### a. § 523(a)(4)

Pursuant to 11 U.S.C. § 523(a)(4) debts that are incurred as a result of "fraud or defalcation while acting in a fiduciary capacity" are nondischargeable. Section 523(a) exceptions are narrowly construed in order to provide the debtor with a fresh start and the burden is on the party opposing discharge. Werner v. Hoffman, 5 F.3d 1170. 1173 (8th Cir. 1993); In re Belfry, 862 F.2d 661, 662 (8th Cir. 1988). Therefore, § 523(a)(4) contains two elements: first, did a fiduciary relationship exist, and second, was fraud or defalcation involved in the fiduciary's actions. This Court will first address the preliminary issue as to whether collateral estoppel applies regarding the fiduciary relationship.

"Whether a relationship is a 'fiduciary' one within the meaning of § 523(a)(4) is a question of federal law." Arvest Mortgage Co. v. Nail (In re Nail), 680 F.3d 1036, 1039 (8th Cir. 2012)(quoting In re Cochrane, 124 F.3d 978, 984 (8th Cir. 1997)). However, state law is to be consulted to determine when a trust relationship exists. Laughter v. Speight, 167 B.R. 891, 895 (W.D. Ark. 1993), *aff'd*, 16 F.3d 287 (8th Cir. 1994).

The state court found that Roussel had a fiduciary duty to Clear Sky and Deere and Roussel breached that duty, which resulted in damages. (Pl. Ex. 22, 23, and 24.) This Court is not an appellate court of the state court and is collaterally estopped from relitigating issues that were tried in state court. However, the fiduciary duty required by § 523(a)(4) was never litigated in state court. Therefore, this Court must decide whether the fiduciary duty found by the state court is the type of fiduciary duty that § 523(a)(4) requires in order to find a debt is

7

nondischargeable.

For purposes of § 523(a)(4) the fiduciary relationship must arise from an express or technical trust that was imposed before and without any reference of the wrongdoing that caused the debt. In re Cochrane, 124 F.3d 978, 984 (8th Cir. 1997). Typically, an express or technical trust arises from a contract. In re Nail, 680 F.3d 1036, 1039-1040 (8th Cir. 2012).

Arkansas case law and Arkansas statutes support the creation of a fiduciary relationship in the absence of an express or technical trust. Lewis v. Spivey (In re Spivey), 440 B.R. 539, 545 (Bankr. W.D. Ark. 2010)("managing member of a limited liability company may also have a fiduciary relationship with the limited liability company by virtue of his position"). To the extent that state law creates a fiduciary status in an officer, section 523(a)(4) can be applied to preclude discharge. Barclays v. Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 878 (8th Cir. 1985); Bell v. Collins (In re Collins), 137 B.R. 754, 756 (Bankr. E.D. Ark. 1992). Pursuant to Arkansas Code Annotated § 4-32-301, "[e]very member and manager must account to the limited liability company and hold as trustee for it any profit or benefit derived by that person. . . ."

However, "[i]t is the substance of the transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes." In re Long, 774 F.2d 875, 878-879 (8th Cir. 1985)(citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 334, 55 S.Ct. 151, 154 (1934)). "The broad general definition of fiduciary–a relationship involving confidence, trust and good faith–is inapplicable." Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001). While a statutory trust can satisfy the dictates of § 523(a)(4), that does not necessarily mean that it does. The Eighth Circuit explains:

> It is not enough [ ] that a state statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.' Rather, to meet the requirement of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose 'trust-like duties.' Matter of Tran, 151 F.3d 339, 342-43 (5th Cir. 1998).

In re Nail, 680 F.3d 1036, 1040 (8th Cir. 2012).

Under common law principles, a trust is created in property and does not come into existence until there is an ascertainable interest in property that will be the trust res. Beiger v. IRS, 496 U.S. 53, 62, 110 S.Ct. 2258, 2265 (1990). The Court must look at the "res" and examine what the duties are. The trust like duties imposed on Roussel were the duty of loyalty to the company and the duty owed to Deere by virtue of his position as a managing member of Clear Sky. As the case law has held, the duty of loyalty is simply not the type of fiduciary duty to which § 523(a)(4) refers. See In re Shahrokhi, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)

The Plaintiffs argue that the "definable res" include the assets of the limited liability company, i.e., "the agents, Roussel's relationship as a managing member with those agents, Roussel's relationship with the Exit franchisers, and Roussel's own efforts as a salesman." (Pl.'s Closing Trial Brief). This is not a "definable res" for purposes of § 523(a)(4). This Court finds that people, relationships, and efforts do not make a valid res for purposes of § 523(a)(4). Therefore, the jury award for breach of fiduciary duty regarding past and future lost revenue in the amount of $184,683.60 and the award to Deere for breach of fiduciary duty in the amount of $58,800.00 is dischargeable pursuant to § 523(a)(4).[3]

---

[3] It could be that a portion of the $58,800.00 award to Deere was a result of damages done to property that was included on the Plaintiffs' list of missing items. (Pl. Ex. 17.) However, this argument was not made and it is impossible to tell from the Court's record what res this breach of fiduciary duty award is referring. Because the Plaintiffs have the burden of proof, the debt is dischargeable.

Deere presented the state court jury and this Court with a list of property she alleges was missing or damaged. (Pl. Ex. 17.)  It is not clear from the record which property off the list the jury found that Roussel damaged or how they reached the amount of $1,480.00 for damages to Clear Sky property.  However, the property listed on the exhibit would constitutes a "definable res."  Therefore, the question arises when Roussel breached his duty of care with regard to this Clear Sky property, did he commit a defalcation.

Defalcation is generally considered "a failure to account for money or property that has been entrusted to one."  Hunter v. Philpott, 373 F.3d 873, 875 (8th Cir. 2004).  As a managing member of Clear Sky, Roussel was entrusted with Clear Sky's property.  Based on the jury award regarding damage to Clear Sky property, this Court finds Roussel committed a defalcation regarding Clear Sky's property in the amount of $1,480.00.  Accordingly, pursuant to § 523(a)(4), $1,480.00 is nondischargeable.

b. § 523(a)(6)

Any debt "for willful and malicious injury by the debtor . . . to the property of another entity" is excepted from discharge.  11 U.S.C. § 523(a)(6).  The conduct complained of must be both willful and malicious.  Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985).

The Plaintiffs argue that the punitive damage award demonstrates that Roussel's acts were willful and malicious and that the breach of fiduciary duty award was based on the same conduct supporting the punitive damage award.  The error in this argument is that the jury instructions do not require that the jury find the injury was a result of both willfulness and malice in order to award punitive damages.

10

The Plaintiffs cite to an opinion out of this court that involved the same jury instruction regarding punitive damages. See In re Harper, 378 B.R. 836 (E.D. Ark. Bankr. 2007). However, that case is distinguishable because there were other jury instructions involving trespass and conversion and willfulness the court looked at when analyzing whether both willfulness and malice were necessary to the state court award. In re Harper, 378 B.R. 836, 851-52 (E.D. Ark. Bankr. 2007).

It is not possible, on this record, for the Court to find that both willfulness and malice were found by the jury in awarding punitive damages because the jury could find that either one was present in order to award punitive damages. Therefore, the issue is not collaterally estopped in determining the dischargeability of the debt.

Pursuant to § 523(a)(6) "willful" means "intentional or deliberate." In re Long, 774 F.2d 875, 880 (8th Cir. 1985). Debts that result from "recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 64, 118 S.Ct. 974 (1998). However, the willful injury standard is met if the injury was substantially certain to result from the debtor's conduct. In re Geiger, 113 F.3d 848, 852-853 (8th Cir. 1997). Malicious refers to conduct "targeted at the creditor . . . in the sense that the conduct is certain or almost certain to cause financial harm." Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 639 (8th Cir. 1999). Willful refers to an intentional invasion of a legally protected interest of another whereas maliciousness refers to an intentional harm as a result of the invasion. Quadrangle Enterprise, Inc. v. Harper (In re Harper), 378 B.R. 836, 851 (E.D. Ark. Bankr. 2007). The Plaintiff has the burden of proving each element of § 523 by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654 (1991).

11

There was no proof offered that Roussel intended a deliberate or intentional injury. Rather, the proof offered was that Roussel could harm Deere's business by causing the failure of Clear Sky. There was also no substantial certainty that Deere would be financially harmed by Roussel opening another franchise. Rather, proof was offered that Exit initially mapped Conway for two franchises. Nothing in the record or in the state court record suggests that Roussel, Bletsh, or Hutchins ever solicited agents to leave Deere's franchise. The Plaintiffs were unable to show that Roussel intentionally invaded any of Deere's legally protected interests or intentionally harmed Deere. The Plaintiffs did not prove by a preponderance that Roussel incurred the state court judgment as a result of a willful and malicious injury to Deere. Therefore, the award of punitive damages in the amount of $113,836.40 is dischargeable.

### c. Attorneys' Fees

Plaintiffs filed a motion and were awarded attorneys fees and costs in state court in the amount of $82,611.25 in attorneys fees and $4,912.00 in costs. The motion was based on the Operating Agreement that provided that the losing party would pay for any dispute that arose between the parties and Arkansas Code Annotated § 16-22-308 that awards attorneys' fees and costs to the prevailing party on a breach of contract claim. An award of attorneys' fees pursuant to § 16-22-308 is permissive and discretionary. Logue v. Seven-Hot Springs Corp., 926 F.2d 722, 725 (8th Cir. 1991). The award of attorneys fees and costs in state court was based on a contract or breach of contract, which is dischargeable in bankruptcy. Therefore, this Court finds that the fees and costs awarded by the state court in the amount of $87,523.25 are dischargeable.

### IV. CONCLUSION

This Court finds that the Plaintiffs' state court judgment against Defendant in the sum of

$1,480.00 is nondischargeable and the sum of $444,843.25 is dischargeable.

A final judgment in accordance with this memorandum opinion will be entered on this date.

IT IS SO ORDERED.

*/s/ James G. Mixon*

Dated: 12/03/2012

U. S. BANKRUPTCY JUDGE

DATE:_____

cc: Kevin P. Keech, Esq.
     Stephen W. Jones, Esq.
     Daniel L. Herrington, Esq.
     H. Wayne Young, Esq.
     James Dowden, Trustee